United States Courts
Southern District of Texas
F I L E D

DEC 19 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | CRIMINAL NO. H- |
| v. § | |
| § | **19 CR 910** |
| KELLEY LAVONE AUSTIN § | |
| Defendant § | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
(18 U.S.C. § 157-Bankruptcy Fraud, Scheme to Defraud)

A. **INTRODUCTION**

At all times material to this indictment:

**The Defendant and Client**

1. **Kelley Lavone Austin** ("**Austin**"), defendant herein, was the owner of The Austin Law Firm PLLC, located in Sugar Land, Texas. Austin was licensed in 2003 by the State Bar of Texas, and she maintained a bankruptcy practice since 2004 in the Houston area.

1

2. **L.D.** ("L.D."), a person known to the Grand Jury, retained **Austin** to represent her in a Chapter 13 bankruptcy case, filed in the Houston Division of the Southern District of Texas. Austin also represented L.D. in a divorce proceeding filed in Ft. Bend County, Texas.

### The Bankruptcy Process

3. Bankruptcy is a process by which a debtor obtains financial relief from his/her creditors (those who are owed money by the debtor). The process is conducted in federal court and is governed by the United States Bankruptcy Code, which is found in Title 11 of the United States Code.

4. An individual or a business may file a bankruptcy "petition" for one of several types of bankruptcy, commonly referred to as chapters. The debtor usually employs an attorney who is knowledgeable of the bankruptcy laws, the bankruptcy process, the local rules of the Bankruptcy Court, and is experienced in appearing in court and making arguments before the Bankruptcy Court in behalf of the debtor.

5. One of the types of bankruptcy is known as "Chapter 13." A Chapter 13 bankruptcy enables individuals called "debtors" with regular income to develop a plan to repay all or part of their debts to creditors. Under this chapter, debtors propose a repayment plan to make installments to creditors over three to five years. If the debtor's current monthly income is less than the applicable state median, the plan will be for three years unless the court approves a longer period "for cause."

If the debtor's current monthly income is greater than the applicable state median, the plan generally must be for five years. In no case may a plan provide for payments over a period longer than five years. 11 U.S.C. § 1322(d). During this time, the law forbids creditors from starting or continuing collection efforts without an order of the court.

6. When a bankruptcy petition is filed, every debtor's attorney is required to comply with Section 329 (a) of the Bankruptcy Code, which requires:

**Any attorney representing a debtor in a bankruptcy case or in connection with a case, whether or not such attorney applies for compensation in the case, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.**

7. A Statement of Compensation must be filed with the court under Federal Rule of Bankruptcy Procedure Section 2016 (b) e.g. the "2016 (b) form" which requires:

**Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order of relief, or at any time as the court may direct, the statement required by § 329 of the Bankruptcy Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed. Disclosure of compensation pursuant to § 329 and Rule 2016 (b) is mandatory, not permissive.**

8. The Bankruptcy Code requires fee disclosure so that courts can prevent overreaching by debtors' attorneys and give interested parties like creditors the ability to evaluate the reasonableness of the fees paid. Payments to a debtor's attorney provide serious potential of overreaching by the debtor's attorney, and should be subject to careful scrutiny. The court has an independent duty to review any fee application or 2016 (b) form, even in the absence of an objection from an interested party. Broad discretion is vested in the court to conduct such review. If a debtor's attorney is not paid in full prior to the filing of the bankruptcy petition, the debtor's attorney becomes what is called a "pre-petition creditor," and is subject to the same prohibitions of collecting his/her legal fees as other pre-petition creditors without further order of the court.

9. In a Chapter 13 case, payments to an attorney post-petition, must be approved by the court upon the attorney filing a fee application with the court. By failing to disclose post-petition payments, the attorney effectively "games" the bankruptcy court, the bankruptcy system, and creditors.

B. **THE SCHEME TO DEFRAUD**

10. From on or about November 30, 2012, and continuing to December 31, 2018, in the Houston Division of the Southern District of Texas and elsewhere,

**Kelley Lavone Austin**

defendant herein, having devised and intending to devise a scheme and artifice to defraud L.D. known to the Grand Jury, the Bankruptcy Court, Creditors, and others, for the purpose of executing and concealing said scheme and artifice, filed a petition and other documents under Title 11, United States Code, in Bankruptcy Case Number: 14-35557, and made false and fraudulent representations, claims, and promises, including omitting and concealing material facts, concerning and in relation to a proceeding under Title 11, as more fully set forth below.

C. **EXECUTION OF THE SCHEME TO DEFRAUD**

11. The scheme and artifice consisted of the defendant filing a chapter 13 bankruptcy case in the United States Court for the Southern District of Texas on behalf of her client L.D. At this time, the defendant represented L.D. in an ongoing divorce proceeding. The defendant did not disclose such representation to the bankruptcy court, or payments she received for such services post-petition. In addition, after obtaining a divorce settlement, the defendant received a cashier's check (money that was an asset of the bankruptcy estate) which the defendant concealed from the Court and misappropriated and embezzled such funds for her own use and benefit in violation of the bankruptcy code.

12. It was further part of the scheme and artifice to defraud the defendant did not obtain the bankruptcy court's approval to represent L.D. in a divorce proceeding prior to filing bankruptcy.

13. It was further part of the scheme and artifice to defraud that the defendant would and did receive payments for legal services in the divorce proceeding from L.D. after the bankruptcy petition was filed, and the defendant did not timely file a Rule 2016(b) form which would have disclosed outstanding balances owed by L.D.

14. It was further part of the scheme and artifice to defraud that the defendant would and did fail to disclose to the bankruptcy court receipt of a cashier's check for $10,000.00 that she received in L.D.'s behalf in settlement of the divorce proceeding, an asset of the bankruptcy estate, and any transfer of such property without the required prior approval of the bankruptcy court.

15. It was further part of the scheme and artifice to defraud that the defendant would and did endorse the cashier's check by signing L.D.'s name without her knowledge and authorization, and depositing the check into defendant's IOLTA account. The defendant obtained a legal fee from the funds and gave L.D. the remaining funds.

16. It was part of the scheme and artifice to defraud that the defendant's bank sent her a notice indicating that the cashier's check was returned as unpaid and that defendant's account was charged to recover the funds.

17. It was further part of the scheme and artifice to defraud that the defendant would and did file a complaint with the Ft. Bend Sheriff's Office claiming that money was stolen by L.D. from her with an insufficient funds check. L.D. was

arrested and indicted for felony theft based on the defendant's complaint by the Ft. Bend County District Attorney's Office.

18. It was further part of the scheme and artifice to defraud that the defendant, in response to a motion to substitute counsel in a bankruptcy proceeding filed by L.D. which alleged a conflict in defendant's representation, the defendant filed a response with the court denying the allegation by stating that "the alleged conflict does not now nor has it ever existed," when in truth, the defendant well knew that there was an on-going dispute concerning the defendant accepting legal fees from L.D. without obtaining approval of the court.

19. It was further part of the scheme and artifice to defraud that the defendant approximately five (5) months after receiving the $10,000.00 cashier's check filed a Form 2016 (b) with the court for the first time disclosing receipt of the $10,000.00 cashier's check.

20. It was further part of the scheme and artifice to defraud that the defendant filed a Form 2016 (b) with the court in May 2017 disclosing for the first time receipt of post-petition payments received by defendant in July 2015 and February 2016 for representing L.D. in the divorce proceeding.

21. It was further part of the scheme and artifice to defraud that the defendant, approximately three (3) years after the fact, when she well knew that she represented L.D. in the divorce proceeding and the bankruptcy case, filed a Nunc

Pro Tunc (Meaning-to permit retroactive employment) application with the bankruptcy court to approve employment and payment as a "cover-up" for legal services she received from L.D. in the divorce proceeding for which she should have obtain court approval from the beginning.

In violation of Title 18, United States Code, Section 157 (1), (2), (3).

## COUNT TWO
### (18 U.S.C. § 153-Embezzlement against Bankruptcy Estate)

On or about July 19, 2016, in the Southern District of Texas and elsewhere,

### Kelley Lavone Austin

defendant herein, who was an attorney for L.D., debtor in a bankruptcy proceeding who was known to the Grand Jury, did knowingly and fraudulently embezzle and appropriate to her own use property, that is, proceeds from a $10,000.00 cashier's check belonging to the bankruptcy estate of L.D., which property came into defendant's possession.

In violation of Title 18, United States Code, Section 153.

## COUNT THREE
### (18 U.S.C. § 153-Embezzlement against Bankruptcy Estate)

On or about July 13, 2015 and continuing through on or about February 22, 2016, in the Southern District of Texas and elsewhere,

### Kelley Lavone Austin

defendant herein, who was an attorney for L.D., the debtor in a bankruptcy proceeding who was known to the Grand Jury, did knowingly and fraudulently embezzle and appropriate to her own use property, that is, three payments of $1,600.00, $400.00, and $600.00 received from L.D. for legal representation in a divorce proceeding which belonged to the bankruptcy estate of L.D., a debtor, which property came into defendant's possession.

In violation of Title 18, United States Code, Section 153.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE
Foreperson of the Grand Jury

RYAN K. PATRICK
UNITED STATES ATTORNEY

Quincy L. Ollison
Assistant United States Attorney